The Honorable Al Ramirez State Senator, 5th District Statehouse, Room 128-S Topeka, Kansas 66612
Dear Senator Ramirez:
As state senator for the 5th district you request our opinion concerning the following questions:
 "1. Does a county or state have the authority to contract for construction or operation of a correction facility with a private entity, including both profit and not-for-profit entities?
 "2. Does a municipality have the authority to contract for construction or operation of a correction facility with a private entity, including both profit and not-for-profit entities?
 "3. Does a city, county or state have the authority to house prisoners in facilities outside of their jurisdictional limits (e.g. city prisoners held in a facility maintained by another city; county and state prisoners held in a facility located in another county or state?"
Your first two questions in essence are whether there is any legal impediment to the contractual operation of private prisons or jails in Kansas. There are two answers to this questions: one regarding inmates from other states and one regarding Kansas inmates.
 Inmates from Other States
Four years ago the Kansas legislature enacted senate bill 748 (L. 1990, ch. 309, sec. 84) which prohibited local units of government and private entities from authorizing, constructing, owning or operating any type of correctional facility for the placement or confinement of inmates from any agency of another state unless authorized by Kansas statute. The restrictions did not apply to regional, city or county jails used exclusively as such jails and as places of detention for inmates, prisioners or fugitives as authorized by statute. The statute was established as a temporary measure with an internal expiration date of July 1, 1991 to allow the legislature time to review and provide a public policy regarding such activity.
Following the 1990 legislative session, a special committee on the judiciary held a series of meetings on the topic of private prisons, concluding and recommending as follows:
 "The Committee has serious concerns about the economic feasibility of plans to build private prisons by communities and to fill these facilities with out-of-state prisoners. Conflicting testimony was presented on this issue but the Committee points to the lack of any specific commitment presented by any out-of-state prison facility willing to send prisoners to Kansas. The Committee also has strong concerns about the potential exposure of local governments or the state for tort and civil rights liability connected with private prison operations. Finally, the proposal raises the basic issue of the fundamental responsibilities of government. Operating prisons for out-of-state prisoners for economic development purposes does not seem appropriate within the traditional responsibilities of government.
 "For these reasons, the Committee recommends that the moratorium on the construction of private prisons to house prisoners from other states be extended indefinitely. The recommendation is included in H.B. 2033. The Committee has no intent of restricting private prison facilities built for the federal government since the Supremacy Clause of the United States Constitution would likely override any state restrictions on federal decisions in the area." Report on Kansas Legislative Interim Studies to the 1991 Legislature, Re: Proposal No. 12 — Regional Prison Authorities — Private Prisons.
House bill no. 2003 was passed in 1991 (L. 1991, ch. 266, sec. 1) as recommended by the committee and is now codified at K.S.A. 1993 Supp.75-52,133:
 "(a) Except as authorized by Kansas statute, no city, county or private entity shall authorize, construct, own or operate any type of correctional facility for the placement or confinement of inmates from any agency of another state."
This restriction is not applicable to federal correctional facilities, nor to regional, city or county jails used exclusively as jails and detention centers for inmates, prisoners or fugitives pursuant to K.S.A. 1993 Supp. 19-1930 (federal or city prisoners in county jail), K.S.A. 1993 Supp. 75-5217 (persons who violate conditions of parole, conditional release or postrelease supervision in county jail) or K.S.A. 19-1917
(fugitives from another state or territory). K.S.A. 1993 Supp.75-52,133(b).
 Kansas Inmates
Unlike restrictions for out-of-state prisoners, there is no statutory prohibition pertaining to confinement of prisoners held under authority of Kansas law in privately constructed or operated correctional facilities. However the question of a potential constitutional impediment to the privatization of correctional facilities has been raised by several legal scholars. See Evans, Private Prisons, 36 Emory L.J. 252, (1987); Field,Making Prisons Private: An Improper Delegation of a Governmental Power, 15 Hofstra L.R. 649, (1987); Should Prisons be Privately Run?, ABA Journal, (April 1, 1987); Ellison, Privatization of Corrections: ACritique and Analysis of Contemporary Views, 17 Cum.L.R. 385, (19__). The constitutional issue discussed by these authors, who reach differing conclusions, is whether the delegation of the corrections function to a private entity is constitutional. These varying analyses, while scholastically interesting, to date remain academic as no court decisions have surfaced which directly address the constitutional issue. We would tend to agree with Professor Ellison's conclusion that such delegation is not a constitutionally impermissible delegation of legislative authority:
 ". . . When a governmental entity decides to encourage penal program innovation and economic efficiency by housing an inmate in a private correctional facility, no delegation of constitutional power vested exclusively in the governmenal entity accompanies the transferred inmate from the public to the private correctional facility. The use of a private correctional facility is merely a means employed by the governmental entity to execute its penological purposes. The governmental entity remains, at all times, the responsible incarcerating body, with the power to impose addiitional penal sanctions for institutional infractions, and the power to grant early release for faithful compliance with its penological rules.
 "A governmental entity may authorize its correctional agencies and officials to enter into contracts with private correctional entities for the purpose of executing its penological objectives. Delegation involves the congressional or state abdication or transfer to others of essential legislative functions. Where legislation provides an intelligible principle to guide the person or body delegated to carry out the legislative purpose, `such legislation is not a forbidden delegation of legislative power.'" Ellison, Privatization of Corrections: A critique and Analysis of Contemporary Views, 17 Cum.L.R. 683, 693-693 (1987).
Statutory authority has been granted to the secretary of corrections to "acquire, in the name of the state, by lease or contract additional facilities as may be needed for the housing of persons in the secretary's custody." K.S.A. 1993 Supp. 75-5210(k). Additionally the secretary has authority to contract with qualified individuals, partnerships, corporations or organizations to establish work release programs and other rehabilitation programs. K.S.A. 1993 Supp. 75-5210(m). Whether the secretary chooses to exercise this contractual authority in relation to private correctional facilities is a matter within the secretary's discretion.
Counties and cities have authority to contract in relation to concerns necessary to the exercise of their corporate or administrative powers. K.S.A. 19-101; K.S.A. 12-101. This grant of authority is sufficiently broad to enable a county to contract with a private entity for the construction or operation of a county or city jail. Again, whether a city or county chooses to exercise such authority is discretionary with the governing body.
Your last question is whether a city, county or state has the authority to house prisoners in facilities outside of their jurisdictional limits.
Regarding the state, K.S.A. 75-52,129 provides the authority for the secretary of corrections to negotiate and enter into contracts with Kansas cities and counties for the placement of certain inmates in city or county operated facilities. In addition, Kansas is a party to the interstate corrections compact, K.S.A. 76-3002, which authorizes the secretary of corrections to contract with other party states for the confinement of inmates.
A number of statutory provisions exist which would authorize a city or county to house "foreign" prisoners: K.S.A. 19-1916 (district court judge may order prisoner committed to nearest county jail upon finding of insufficient jail in own county); K.S.A. 19-1929 (county without sufficient jail may contract with city in such county which has adequate jail); K.S.A. 1993 Supp. 19-1930 (county jail to receive federal or city prisoners until discharged according to law). In addition, while cities and counties have general contract authority as discussed above, a city or county may also consider an agreement pursuant to the interlocal cooperation act, K.S.A. 12-2901 et seq., for the purpose of housing prisoners from another city or county.
In conclusion, with some narrowly drawn exceptions, cities, counties and private entities are prohibited from authorizing, constructing, owning or operating a correctional facility for the placement or confinement of inmates from any agency of another state. There is no statutory or constitutional impediment which would prevent a city, county or the state from contracting with a private entity for the construction or operation of a jail or correctional facility. Whether to enter such a contract is within the discretion of the governing body of a city or county or the secretary of corrections. There is statutory authority which permits a city, county or the state to house prisoners in detention or correctional facilities located outside their respective jurisdictional limits.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Camille Nohe Assistant Attorney General
RTS:JLM:CN:bas